BECKER, Judge.
This appeal arises from a long standing struggle between the Sierra Club, an environmental conservationist group and the shell dredging industry represented in this case by Dravo Basic Materials Company (Dravo). In March of 1983 the Sierra Club filed the present suit to declare illegal certain leases between Dravo and the Louisiana Department of Wildlife and Fisheries because they awarded to Dravo the right to remove shells and shell deposits from the water bottoms belonging to the State of Louisiana without first having obtained these contracts through the public bid process as required by Louisiana Revised Statute Title 30 section 156. On March 18, 1987, the trial court rendered a declaratory judgment, which held that since these contracts involved mineral rights which must be leased through public bidding, the current leases were unlawful. This Court affirmed that ruling on January 14, 1988, 519 So.2d 836 (La.App. 4th Cir.1988), and the Supreme Court denied writs on March 18, 1988, 521 So.2d 1151 (1988).
The shell dredgers contend that the declaratory judgment imposes no legal obligation upon the litigants to conduct themselves in accordance with the court’s decree and have continued to dredge. On March 22, 1988, the shell dredgers filed a “Peti *420 tion for Clarification of Judgment and Supplemental Relief” in which they asked the trial judge to declare that they be permitted to continue to operate on an interim basis while the public bid process went forward and further that the plaintiff and the Department of Wildlife and Fisheries be directed and enjoined from interfering with said operations while those bidding procedures were implemented and completed.
On March 30, 1988, the Sierra Club responded by filing a Writ of Mandamus asking that the Secretary of the Department of Wildlife and Fisheries be directed to comply with this court’s earlier decree and order that the dredging be stopped. The Attorney General of the State of Louisiana intervened in the suit and on April 8, 1988, joined with the Department of Wildlife and Fisheries to formally oppose the shell dredger’s petition and to enjoin shell dredging until lawful leases were obtained.
A hearing was held on April 26, 1988, and thereafter the judge took the matter under advisement. Concurrent with these proceedings but before the court had rendered a judgment, the Louisiana Legislature passed and the Governor signed Act 41 of 1988, effective June 13, 1988, which purportedly authorized shell dredging to continue without lawful leases until new leases were obtained pursuant to the public bid process.
On September 26, 1988, the trial judge handed down his ruling which preliminarily enjoined further shell dredging activities unless and until such time as the rights to take such shells and shell deposits are awarded to the respective parties "... after compliance with the Louisiana Public Bid Laws and the other applicable Louisiana regulatory laws.” While there was no mention of Act 41 of 1988 in his judgment the judge stated in his Reasons for Judgment that he felt Act 41 could not supersede the Constitutional requirement that there shall be no leasing or selling of minerals or mineral rights owned by the State without prior public notice or public bidding as shall be provided by law. Article 9 § 5 Louisiana Constitution of 1974. The trial judge thus reasoned that Act 41 was not a deterrent to the preliminary injunctions which were then issued.
On the very same day that the trial court rendered its judgment, the Louisiana Department of Wildlife and Fisheries and Dravo signed two new shell dredging leases which Dravo alleges now comply with the public bid laws. The Sierra Club contends that these leases still fail to comply with the public bid laws as well as other applicable regulatory laws in numerous respects. At this time however neither party has sought a judicial interpretation as to the validity of the new leases.
As a result of the signing of the new leases Dravo now contends that the September 26, 1988 judgment was rendered moot on its face.
DRAVO’s APPEAL
Dravo argues that the trial court exceeded its jurisdiction and ruled beyond the scope of the pleadings and evidence when it held that the shell dredgers were subject to “other applicable Louisiana regulatory laws.”
After a review of the pleadings and evidence we find that the applicability of other Louisiana regulatory laws and whether they must be complied with before the shell companies can operate were not issues properly before the trial court and therefore that portion of the trial court’s judgment must be reversed. The issue of compliance with “other applicable Louisiana regulatory laws” was not raised in any of the pleadings and cannot be raised indirectly by the Sierra Club’s allegation that Dra-vo’s March 22, 1988, Petition for Clarification of Judgment and for Supplemental Relief was a blanket request to permit shell dredging despite the invalidity of the leases and regardless of the state of compliance with other applicable regulatory laws.
As stated in Patrick v. Patrick, 227 So.2d 162 (La.App. 2nd Cir.1969), writs refused, 255 La. 238, 230 So.2d 91: •
When the court adjudicated matters not regularly before it, it exceeded its authority. Due process requires adequate notice to the parties of the matter which will be adjudicated.
*421 In addition, the trial court itself acknowledged in its Reasons for Judgment that despite the inclusion of such language in the judgment it has no jurisdiction over “other applicable Louisiana regulatory laws.”:
However, by no means does this court mean to imply that it has jurisdiction over the enforcement over the other applicable regulatory laws-only that the mere compliance with the public bid process does not confer on an individual or legal entity the right to remove the shell deposits unless other applicable regulatory laws are complied with as they may be administered by the various State agencies.
Therefore, that portion of the judgment referring to “other applicable Louisiana regulatory laws” must be reversed; however, this does not render the entire judgment absolutely null as the trial court did have proper jurisdiction over the issue of compliance with the Louisiana public bid laws and thus that part of the judgment may still stand.
Dravo also argues the trial court’s judgment should be reversed as it became moot on the very day that it was rendered because of the fact that the new leases were signed on the very same day that the preliminary injunctions were issued.
We feel that Dravo’s argument presupposes that the new leases comply with the public bid laws of Louisiana as enumerated in Louisiana Revised Statutes Title 30 § 156. The proper procedure is for Dravo to return to the court which issued the injunction so it may determine whether the new leases comply with the law. If the leases do in fact meet those requirements then the preliminary injunctions should be dissolved. Therefore, we are going to remand to the trial court the issue of whether or not the new leases do in fact comply with the public bid law.
Dravo also contends that the trial court’s judgment should be reversed because it is contrary to the evidence and the law, including Act 41 of 1988.
Act 41 of 1988 sought to provide for the interim operation of the shell dredging industry from the time that no valid leases existed until such a time that new publicly bid leases were consummated. The purpose of the act was to continue the viability of the shell dredging industry so as to avoid an alleged economic disaster by virtue of its temporary shutdown. The shell dredgers contend that since they have such huge capital investments in their plant and equipment a shutdown could paralyze the industry and cause financial hardship.
Although the constitutionality of Act 41 of 1988 was raised by the parties in prior pleadings, no formal hearing or ruling was ever rendered on the matter.
However, this court need not decide the issue because Act 41 by its nature was a temporary measure whose time limit has already expired, and may have been rendered moot if the new leases are found to be in compliance with the public bid laws of this state.
We find that no matter how urgent the purpose or reason for allowing dredging to continue, the industry must abide by the laws and the Constitution of this state.
Accordingly, we reverse the September 26, 1988, judgment in so far as it relates to “other applicable Louisiana regulatory laws” and affirm the judgment enjoining further dredging until the leases are determined to be in compliance with Louisiana public bid laws. We further remand to the trial court the issue as to the validity of the new leases.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.
CIACCIO, J., concurs with reasons.